# Wagner, Appellant, *v.* Fehr.

*Equity—Equity jurisdiction—Fraud—Reconveyance of real estate—Consideration—Worthless stock—Corporations.*

A court of equity in all cases of actual fraud, has a concurrent jurisdiction with a court of law in remedying the fraud; and the remedy in equity is frequently more beneficial than at law, by means of its power to compel discovery and to cause fraudulent deeds and securities to be canceled or conveyance to be made, thus effectually putting an end to future litigation.

A court of equity will sustain a bill against two defendants for the reconveyance of real estate and the repayment of purchase money which charges that the plaintiff was induced to convey his real estate to one of the defendants for a part consideration of cash, and the balance in the stock of a corporation which was worthless, by reason of the fraudulent organization of the corporation by the defendants, and that the first defendant had conveyed the property to the second defendant, who had full knowledge of the fraud.

ELKIN, J., dissents.

Argued March 1, 1905.   Appeal, No. 48, Jan. T., 1905, by plaintiff, from decree of C. P. Berks Co., equity docket 1903,

No. 846, dismissing bill in equity in case of John S. Wagner v. Horace Fehr and Francis F. Seidel. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Reversed.

Bill in equity for a reconveyance of real estate. Before END-LICH, J.

The material averments of the bill and the grounds of demurrer are set forth in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Isaac Hiester*, with him *D. Nicholas Schaeffer*, for appellant. —The remedy at law is not adequate for it falls short of giving the plaintiff what he is entitled to have : Independent B. & L. Assn. v. Real Estate Title Co., 156 Pa. 181.

The remedy at law is not complete for it does not attain the full justice of the case: Griswold v. Gebbie, 126 Pa. 353 ; 1 Story's Equity Jurisprudence, sec. 193 ; Cocking v. Pratt, 1 Ves. 400 ; Mays v. Dwight, 82 Pa. 462.

The uniform practice of the courts of Pennsylvania has been to sustain a bill in equity for rescinding and canceling a deed of real estate procured by fraud and for ordering a reconveyance where the deed has been recorded. To affirm this decree would establish a new practice in this respect: Meurer's Appeal, 119 Pa. 115 ; Mortland v. Mortland, 151 Pa. 593 ; Williams v. Kerr, 152 Pa. 560 ; Lower's App., 1 Walker, 404 ; Kingsland v. Cavanagh, 31 Pitts. L. J. (N. S.) 378.

*H. P. Keiser*, for appellee.—We submit that the plaintiff and appellant should be remitted to his remedy at law, and cite in support of our contention: Young's Appeal, 3 Penny. 463 ; Mackintosh v. Tracy, 4 Brews. 59 ; Way's Appeal, 8 Atl. Repr. 173 ; Edelman v. Latshaw, 159 Pa. 644.

OPINION BY MR. JUSTICE MESTREZAT, April 10, 1905 :

The purpose of the bill filed in this case is to annul and set aside a contract for the conveyance of real estate and to compel a reconveyance of the property. The bill avers that the defendants and certain other parties procured a charter for a

corporation under the name of the American Match Company; that by the certificate it was made to appear that the capital stock of the corporation was $200,000, divided into 2,000 shares, and that defendant Fehr had subscribed for 180 shares and defendant Seidel for 532 shares, and that $20,000, ten per cent of the capital stock, had been paid in cash to the treasurer; that early in September, 1902, Fehr called upon the plaintiff and offered to purchase from him a certain house and lot for $3,350, of which $1,216.67 was to be paid in cash and $2,133.33 in thirty-two full paid shares of stock of said company; that Fehr induced the plaintiff to sell and convey to him the house and lot on the proposed terms by representations which were false, and known to him to be false, that another party was willing to take said stock at the same price in exchange for a property belonging to him but less convenient for Fehr's purpose, and that the company was legitimately organized and was doing a prosperous business, was earning six per cent on its capital stock, etc.; that Fehr took possession of the property, but instead of occupying it by himself and family as he had represented it to be his intention of doing, sold and conveyed it on September 27, 1902, to Seidel for whom Fehr in fact made the purchase and who was fully aware of the facts and misrepresentations referred to; that "plaintiff has but lately learned and now avers that at the time said certificate for incorporation was made no money had been paid to the treasurer of the corporation on account of the capital stock, that none of the subscribers named in the certificate ever paid cash for any part of the stock subscribed by them, that ten per cent of the capital stock was never paid in cash at any time," and that the stock was practically worthless at the time he sold and conveyed the house and lot to Fehr; that upon learning the facts, plaintiff notified Fehr of his election to rescind the contract because of the fraudulent representations and tendered a return of the thirty-two shares of stock and the sum of $1,216.67, paid in cash, and demanded a reconveyance, but the defendants refused to reconvey or to make any satisfaction whatever. The bill prays for a decree annulling and setting aside the contract between the plaintiff and Fehr and requiring the defendants to reconvey to plaintiff the house and lot clear of all encumbrances upon the return to them of the money and

stock given for it, or, if the defendants are unable to reconvey the property, to pay plaintiff $2,133.33 with interest upon the return to them of the stock.

The defendant Seidel demurred to the bill on the grounds (1) that the plaintiff is not entitled to the relief claimed, and (2) that he has a full, complete and adequate remedy at law. The court below sustained the demurrer and the plaintiff has appealed.

The constitution of 1874 provides that the courts of common pleas shall have and exercise " such chancery powers as are now vested by law in the several courts of common pleas of this commonwealth, or as may hereafter be conferred upon them by law." By the 39th section of the Act of June 13, 1840, P. L. 666, 1 Purd. 777, it was enacted that " the equity jurisdiction . . . . of the court of common pleas for said county (of Philadelphia) shall be extended to all cases arising in said city and county, over which courts of chancery entertain jurisdiction on the grounds of fraud, accident, mistake or account." By the subsequent Act of February 14, 1857, P. L. 39, 1 Purd. 777, the equity jurisdiction exercised by the common pleas of Philadelphia was extended to the courts of common pleas throughout the commonwealth. It will be observed, therefore, that in cases of fraud the legislature has conferred on the courts of common pleas of the state the powers and jurisdiction of courts of chancery. Of course, the constitutional provision above alluded to and the statutes conferring equity jurisdiction do not contravene or conflict with the 7th section of the bill of rights which declares that " trial by jury shall be as heretofore, and the right thereof remain inviolate : " North Penna. Coal Co. v. Snowden, 42 Pa. 488 ; Haines's Appeal, 73 Pa. 169. As early as 1849, however, in Wesley Church v. Moore, 10 Pa. 273, Chief Justice GIBSON, speaking for this court, said : " The equitable jurisdiction conferred by these statutes is a valuable —indeed, an indispensable one ; and it ought to be extended by every interpretation of which the words are susceptible." In many subsequent cases, including Mortland v. Mortland, 151 Pa. 593, decided in 1892, this court has manifested a disposition towards a liberal exercise of the equity powers conferred by the statutes. In cases of fraud, where the remedy at law is inefficient and inadequate to do complete justice between the

parties, the court will not refuse to exercise its chancery juris-
diction. In speaking of the general jurisdiction of chancery in
cases of fraud, Mr. Bispham (Principles of Equity, sec. 200)
says : " Apart from statutory limitations, the better opinion
would seem to be that the cognizance of every case of fraud,
with the single exception of fraud in obtaining a will, belongs
to the court of chancery even though there may be a complete
remedy at law. The jurisdiction in such a case is concurrent.
This is the opinion of Lord ELDON, Chancellor KENT and Mr.
Spence. The true conclusion would appear to be that equity
would have the power to entertain a bill in such cases, but that
it is not according to the usual course and practice of chancery
to do so. Where, however, the remedy at law is not full and
adequate, the jurisdiction of chancery in cases of fraud is un-
doubted." This excerpt is quoted in Mortland v. Mortland,
supra, and it is there held that, " Under the acts of June 13,
1840, and February 14, 1857, the courts of common pleas as
courts of equity have jurisdiction to entertain a bill to set aside
a deed alleged to have been executed by an attorney in fact
through the corrupt procurement of the grantee. And the fact
that ejectment might lie will not oust the jurisdiction of equity."
In Williams v. Kerr, 152 Pa. 560, a bill for reconveyance of
land was sustained on the ground that the owners were induced
to sell it by the false representations of the vendee that an im-
provement would be immediately placed upon the property
which would enhance the value of the other lands of the vendor.
In that case it was claimed by the defendants that they had
paid the plaintiff all the land was worth, and, therefore, he had
suffered no pecuniary damage by reason of their false repre-
sentations and hence was not entitled to relief. In reply to this
contention, Mr. Justice HEYDRICK, in the opinion, says : " But
it is such injury as will be redressed to obtain from an owner,
by a false representation of a fact which he deems material, prop-
erty which he would not otherwise have parted with upon the
terms which he is thus induced to accept." In Sutton v. Mor-
gan, 158 Pa. 204, the court rescinded a sale of real estate on a
bill by the vendee, who was induced to purchase land on the
false representations that there was a large demand for building
lots on the property, that railroad shops were to be built in the
neighborhood, and that a certain large sum had been offered for

the property.  As to adequacy of the remedy at law ousting the jurisdiction of equity, it is said in 24 Am. & Eng. Ency. of Law (2d ed.), 642 :  " To justify a court of equity in denying the relief by way of rescission or cancellation it is not enough that the complainant can avail himself of some remedy or defense in a court of law; but such remedy or defense must meet all the requirements of justice and of its prompt administration, and be in all respects as adequate and satisfactory as the relief furnished by a court of equity; and if it is in any way defective, relief in equity will not be denied."  In Garland v. Rives (Va.), 15 Am. Dec. 756, GREEN, J., delivering the opinion, says :  " A court of equity, in all cases of actual fraud, has a concurrent jurisdiction with a court of law in remedying the fraud ; and the remedy in equity is frequently more beneficial than at law, by means of its power to compel discovery and to cause fraudulent deeds and securities to be canceled or conveyances to be made, thus effectually putting an end to future litigation."

A bill for rescission is not necessarily demurrable because the defendant has sold and conveyed the land to another and thereby put it out of his power to reconvey.  If it contain proper averments conferring jurisdiction, compensation in damages may be awarded the plaintiff.  " It is well established," says SHARSWOOD, J., in Mason's Appeal, 70 Pa. 26, " that wherever a court of equity has jurisdiction, if the relief prayed for cannot for some reason be granted, a compensation in damages may be awarded in lieu thereof."  In Reeder v. Trullinger & Co., 151 Pa. 287, it is said :  " The defendants having sold and conveyed the lands to another, the plaintiff is not for that reason without remedy in this action (bill for reconveyance) . . . . Where a defendant has put it out of his power to make a conveyance which otherwise the court would have decreed, by conveying the premises to another, the plaintiff may elect to treat the purchase money received by him as the measure of damages."

Applying these principles to the case in hand, we think it is clear that the court erred in dismissing the plaintiff's bill. The bill avers actual fraud by Fehr in procuring the contract and deed from Wagner and that the property was purchased for Seidel who had full knowledge of all the facts.  The de-

murrer admits the truth of the averments.    The jurisdiction
of the court, therefore, attached and the plaintiff may main-
tain his bill unless he has a complete and adequate remedy at
law for the injuries he has sustained.    The learned trial judge
refused relief on the ground that " there is no distinct and sub-
stantial purpose to be served by the rescission, and that the real
object of the plaintiff is simply to be made whole in pocket."
He and the counsel for the defendants, therefore, maintain
that trespass or assumpsit will afford the plaintiff an ample
remedy for the fraud which, by the pleading, is conceded to
have been perpetrated by the defendants.    With this position
we do not concur.    As appears by the numerous authorities
cited above, the fact that the plaintiff would have a remedy
by a common-law action will not of itself bar the remedy in
equity.    It is clear that the only complete and sufficient remedy
for the plaintiff will be to restore the status quo.    This will
not only give him the house and lot, of which he was deprived
by the fraud of the defendants, but will free him of the re-
sponsibility of the worthless stock transferred to him by Fehr
and now standing in his name.    The transaction was practically
an exchange of the real estate for the stock, the supposed dif-
ference in value being paid in cash.    By falsely representing
that The American Match Company had been properly incor-
porated, and by misrepresenting the condition of its business
and value of its stock, Fehr procured the conveyance of the
plaintiff's real estate to himself at about one third of its value.
The stock was practically worthless, and hence the only con-
sideration the plaintiff received for his property was the
$1,216.67 paid him in cash.    It is apparent, therefore, that the
plaintiff was induced to convey his property to Fehr by the
false representations of a material fact, and was injured thereby
to the extent of nearly two thirds of the value of his house
and lot.    It scarcely needs the suggestion that he would not
have made the conveyance on such terms if he had known the
true condition of the company and the real value of its stock.
The case, therefore, is within the cognizance of equity as ap-
pears by the authorities, and especially Williams v. Kerr, 152
Pa. 560, in which the court says : " It is such injury as will be
redressed by equity to obtain from an owner, by a false repre-
sentation of a fact which he deems material, property he would

not otherwise have parted with upon the terms which he is thus induced to accept."

The plaintiff has the right to require the defendants to accept the retransfer of the stock of The American Match Company. An action at law would, of course, be totally inadequate to give him such relief. We must assume the averments of the bill to be true, and hence the stock of this illegally organized corporation, transferred to the plaintiff, is not only practically worthless, but may subject him to responsibilities from which he should be relieved. Any remedy which fails to give such redress will be inadequate as well as incomplete.

This is a triangular contest in which the plaintiff alleges, and of course expects to prove, actual fraud against both defendants. He must sustain his allegations against Fehr, with whom the contract for the sale of the premises was made and to whom the property was conveyed. Seidel, however, was not known to the plaintiff to be interested in the transaction during the negotiations between the parties, but the bill avers that he was cognizant of all the facts and participated in the fraud, and is now the holder of the legal title to the property. Seidel's connection with the transaction and his assistance in committing the fraud must be ascertained and disclosed in order to give the plaintiff effective and adequate relief. This will doubtless require discovery and the exercise of some other equitable remedies unknown to, and unavailable in, an action at common law. Under such circumstances, the injured party may have redress in equity. In Independent B. & L. Assn. v. Real Estate Title Co., 156 Pa. 181, a bill for cancellation of the satisfaction of a mortgage on the ground that it was procured by fraud of the appellant's agent, the present chief justice in delivering the opinion, said: " Although an action of assumpsit might have been brought on the agent's promise or for money had and received for plaintiff's use, yet relief in a clear subject of equity jurisdiction is not barred by the existence of a remedy at law, even if, in view of the triangular nature of the contest here . . . . that remedy could be considered adequate." And in Bierbower's Appeal, 107 Pa. 14, a bill alleging fraud against two defendants to which a demurrer was sustained, this court reversed the decree, holding that al-

though assumpsit might lie against the principal defendant, a bill would be sustained against him. In the opinion it is said: "But in addition to this there is a charge against another party, not in the original transaction, who assisted in the fraudlent disposition of the collaterals and their proceeds. In this view of the case, certainly no adequate or certain remedy can be found except in equity."

Should the plaintiff fail to sustain his allegation of fraud against Seidel and thereby be unable to compel a reconveyance of the property, he would not be entirely remediless in this proceeding, but could still secure relief by a decree against Fehr for the damages he has sustained: Reeder v. Trullinger & Co., 151 Pa. 287. This, however, would be the full extent of his relief at law, the inadequacy of which compels him to invoke the aid of a chancellor.

The learned trial judge in the latter part of his opinion, anticipating the plaintiff's evidence in the case, says: "He (plaintiff) has planted his case upon the allegation of conscious fraud, not of unconscious mistake. He could not, under his bill, be permitted to prove to the latter as a ground of relief, nor could any decree be founded upon evidence of it." In this stage of the proceeding we need not concern ourselves about the evidence which either party may produce at the hearing. The case, as now presented, requires us to determine the rights of the parties upon the pleadings. It is conceded that the bill avers actual fraud by defendants in procuring the conveyance to Fehr of the plaintiff's property, and the demurrer admits the allegation to be true. If, therefore, the plaintiff's right to equitable relief on the ground of actual fraud is sustained, as we think it must be, the demurrer should have been overruled. Whether the averments of the bill are broad enough to sustain an allegation of constructive fraud and to permit proof of it, we need not now determine.

The fraud averred in the bill is of the worst type, and Seidel by his demurrer admits the truth of the averments. Fehr and his confederates obtained a charter for The American Match Company by fraudulent practices, and he has used the corporation and its stock to further his fraudulent schemes. As disclosed by the pleadings, the plaintiff, without any fault or laches on his part, became Fehr's victim, and the scheme of

fraud concocted by the latter has with the active participation of Seidel been carried to the extent of defrauding the plaintiff of valuable real estate. For a court of equity to close its doors against the injured party and to require him to redress his wrongs through the cumbersome and insufficient machinery of the law is an admission of weakness and inefficiency in our judicial system. Chancery, which supplements the law and furnishes remedies in which the law is deficient, will assume jurisdiction in such cases and compel the wrongdoer to make adequate amends for the injury occasioned by his fraudulent conduct.

We are of opinion that under the averments of the bill, a court of equity has jurisdiction and that the demurrer should have been overruled.

The assignment of error is sustained and the decree is reversed with a procedendo.

Mr. Justice Elkin, dissenting :

The appellant in my opinion has a full, complete and adequate remedy at law. The court below so decided, and in this I see no error. The most that can be said in favor of the plaintiff here is that equity provides a more convenient procedure under the facts of this case. It is conceded that the word " convenient " has been sometimes used with approval by the courts in sustaining equitable jurisdiction. It has not always been aptly used and may be misleading. It was never intended as a definition of equity jurisdiction in the sense of saying an action of law is less convenient and a bill in equity more convenient. It is the convenience of the court, and not of the pleader, to which the term applies. In such cases, however, it is a matter of grace by the court and not of right to the pleader. It may be that equity jurisdiction should be enlarged, but in the absence of legislative authority the wisdom of opening the door just a little wider from time to time by judicial rule so as to unsettle professionally understood rules of practice may be seriously doubted.

I would affirm this case on the opinion of the learned court below.